UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | |
|---|---|
| **WHITE DOG TRADING AND STORAGE, LLC** | **CIVIL NO. 5:25-70-KKC** |
| **Plaintiff,** | |
| **V.** | |
| | **OPINION AND ORDER** |
| **FRANSESCO S. VIOLA and LUCA MARIANO DISTILLERY, LLC** | |
| **Defendants.** | |

*** *** ***

This matter is before the Court on the Defendants' Partial Motion to Dismiss (R. 19). Now that this matter is briefed, it is ready for review. For the following reasons, Defendants' Motion (R. 19) is GRANTED.

## I. FACTUAL BACKGROUND

This case involves a contract to produce bourbon distillate between Plaintiff White Dog Trading and Storage, LLC ("White Dog") and Defendant Luca Mariano Distillery, LLC ("LMD"). On April 17, 2023, the Parties entered into the New Distillate Supply Agreement (the "Contract"). Pursuant to the Contract, LMD promised to produce 6,000 barrels of "Finished Distillate" (as specifically defined in the Contract) in exchange for White Dog's payment of $1,450 per barrel, for a total of $8,700,000. (R. 9 ¶ 6.C.)

The parties' performance was contingent upon many factors. First, the Contract's terms required a 20% "Initial Deposit" from White Dog. (*Id.* at ¶ 7.) Before production could begin, LMD was required to obtain the proper licenses, permits, and approvals necessary to perform its obligations. (*Id.* at ¶ 6.H.) The Finished Distillate had to be "produced according

to a mashbill to be [agreed upon] by the parties at a later date." (R. 1-1 at 30.) White Dog was to make a payment each month prior to the production of the Finished Distillate and LMD was required to complete production "within 6 (six) months after the first date production begins." (*Id.* at ¶ ¶ 6.F., 9) Although no start date was listed, the Contract terminated "no later than December 31, 2024." (*Id.* at ¶ 6.G.) Additionally, while not stated in the contract, White Dog alleges that LMD's founder and co-defendant in this case, Francesco S. Viola ("Viola"), represented that the finished distillate produced would not be the first batch of distillate produced at LMD's new distillery and the bulk of the contract requirements would be completed in 2023. (Id. at ¶ 13.)

After the Contract was signed in early 2023, White Dog advanced an Initial Deposit of $1,600,000 to LMD. (*Id.* at ¶ 7.) The Finished Distillate's production, however, was set back multiple times due to a series of construction delays. (R. 19 at 3.) In July of 2023 LMD made a public announcement that its distillery was "on the verge of becoming a fully functioning facility." (R. 9 at ¶ 17.) On November 22, 2023, Viola emailed White Dog stating that LMD planned to begin producing the distillate on January 15, 2024. (R. 9 at ¶ 18.) Viola indicated that LMD's plan was to send two truckloads a month of 288 barrels of Finished Distillate a month until the 6,000 barrel requirement was completed. (*Id.*) However, as of July 15, 2024, LMD had not begun operations, produced Finished Distillate, obtained all the requisite licenses and permits to legally operate the distillery, nor passed its final required inspections. (*Id.* at 18.) Despite not producing the Finished Distillate, LMD sent White Dog three invoices in 2024, amounting to $2,157,600. (*Id.* at ¶¶ 21, 27, 30.)

On July 16, 2024, White Dog sent a letter to LMD purporting to terminate the Contract. (R. 9 at ¶ 42.) In its letter, White Dog demanded a refund of the Initial Deposit. White Dog asserted that its termination was proper because LMD failed to deliver the

Finished Distillate by July 15, which marked six months after the January 15 start date proposed in Viola's November 22, 2023 email. (*See* R. 22-7.)

After LMD refused to refund the Initial Deposit, White Dog filed suit in Boyle Circuit Court. (*See* R. 1.) White Dog brought a total of thirteen counts against LMD and Francesco S. Viola (together, the "Defendants"), alleging: (I) breach of contract; (II) unjust enrichment; (III) resulting/constructive trust; (IV) declaratory judgment; (V) negligence per se; (VI) breach of fiduciary duties; (VII) fraud by misrepresentation; (VIII) fraud by omission; (IX) negligent misrepresentation; (X) conversion; (XI) civil conspiracy; (XII) indemnification; and (XIII) punitive damages. Of these, only eight counts are asserted against both defendants; the remaining five are asserted solely against LMD. The Defendants subsequently removed the action to this Court. (R. 1) Now, Defendants move to dismiss eight of the thirteen counts against them under Federal Rule of Civil Procedure 12(b)(6). The Court will address each of their arguments in turn.

## II. ANALYSIS

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the plaintiff's complaint. In reviewing a Rule 12(b)(6) motion, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Courier v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 629 (6th Cir. 2009). While a

complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a formulaic recitation of the elements of a cause of action will not do. *Twombly*, 550 U.S. at 555.

### A. Conversion

In its Amended Complaint, White Dog alleges that the Defendants converted the $1,600,000 Initial Deposit. White Dog claims that the Initial Deposit rightfully belongs to it. (R. 9 at ¶¶ 90–96.) Defendants argue that the conversion claim fails as a matter of law under Kentucky precedent, because the right to the funds arose exclusively from the Contract. (R. 19 at 6.) In response, White Dog contends that its conversion claim is appropriate because its "***original*** ownership and right to possession of the Initial Deposit had no connection at all to the New Distillate Supply Agreement." (R. 22 at 10 (emphasis in original).)

Conversion is an intentional tort defined as "the wrongful exercise of dominion and control over property of another[.]" *State Auto. Mut. Ins. Co. v. Chrysler Credit Corp.*, 792 S.W.2d 626, 627 (Ky. App. 1990). In Kentucky, "a plaintiff cannot maintain a conversion claim in addition to a breach of contract claim unless [it] can establish the existence of an independent legal duty separate and apart from the contractual obligation." *First Const., LLC v. Gravelroad Entm't, LLC,* 2008 U.S. Dist. LEXIS 38366, at *5 (E.D. Ky. May 12, 2008) (citing *Mims v. W.-S. Agency, Inc.*, 226 S.W.3d 833, 836 (Ky. Ct. App. 2007). Rather, to assert a conversion claim in conjunction with a contract law claim, the claimant must show that "he sustained tort damages or a loss independent of the contract . . . ." *Jones v. Marquis Terminal, Inc.*, 454 S.W.3d 849, 854 (Ky. App. 2014).

The property at issue in the conversion claim here is the same property at issue in White Dog's breach of contract claim: the $1,600,000 Initial Deposit. Because both claims seek the same relief, a return of the Initial Deposit, White Dog has failed to show that it sustained tort damages or a loss separate from any potential contract damages. If White

Dog's position was accepted, then virtually any funds used to perform a contract could be subject to a conversion claim, simply because they were earned before the parties entered into an agreement. This logic misapplies the law. Accordingly, the Defendants' motion to dismiss the conversion claim is granted.

### B. Unjust Enrichment

White Dog alleges that LMD was unjustly enriched by receiving the $1,600,000 Initial Deposit. Since LMD has yet to answer the complaint, White Dog argues that the unjust enrichment claim should stand in the event LMD disputes the Contract, because he is allowed to plead in the alternative. LMD counters that an unjust enrichment claim is unavailable when the terms of a contract control.

To recover on a claim of unjust enrichment, a plaintiff must prove three elements:

> (1) [a] benefit conferred upon defendant at plaintiff's expense;

> (2) a resulting appreciation of benefit by defendant; and

> (3) [an] inequitable retention of [that] benefit without payment for its value.

*Furlong Dev. Co. v. Georgetown-Scott Cty. Planning & Zoning Comm'n*, 504 S.W.3d 34, 39-40 (Ky. 2016) (quoting *Jones v. Sparks*, 297 S.W.3d 73, 78 (Ky. App. 2009)). "Unjust enrichment is unavailable when the terms of an express contract control." *Furlong Dev. Co.*, 504 S.W.3d at 40 (citing *Sparks Milling Co. v. Powell*, 283 Ky. 669, 143 S.W.2d 75, 76 (Ky. 1940); and *Bates v. Starkey*, 212 Ky. 347, 279 S.W. 348, 350 (Ky. 1926)). Unjust enrichment is rooted in equity and "law trumps equity." *Bell v. Commonwealth,* 423 S.W.3d 742, 748 (Ky. 2014).

Under the Federal Rules, White Dog is allowed to plead in the alternative. *See* Fed. R. Civ. P. 8 (a)(3) and (d)(3). However, there is no need to do so here. LMD concedes that the terms of the Contract "governed the parties' relationship." (R. 19 at 8.) White Dog's concern

5

that LMD would "deny the validity of the New Distillate Supply Agreement" is, therefore, misplaced. (R. 22 at 12.) Because the express terms of the Contract control, recovery under a theory of unjust enrichment is improper. *See Furlong Dev. Co.*, 504 S.W.3d at 40.

Additionally, White Dog argues that it is entitled to rescind the Contract on grounds of unjust enrichment if it prevails on either its breach of contract or fraud claim. This argument mistakenly conflates a remedy (rescission) with a cause of action (unjust enrichment). Rescinding a contract is a remedy potentially available under breach of contract, fraud, and unjust enrichment causes of action, provided the respective elements for each are met. These causes are distinct and each require proof of unique elements. Consequently, even if the unjust enrichment claim is dismissed, White Dog may still recover the $1,600,000 Initial Deposit by succeeding on its breach of contract claim. Accordingly, LMD's motion to dismiss the unjust enrichment claim is granted.

### C.  Fraud

White Dog alleges claims for fraud by misrepresentation and fraud by omission against the Defendants. (*See* R. 9, counts VII and VIII.) As it must on a motion to dismiss, the Court assumes as true all allegations in White Dog's complaint Both counts stem from two representations Viola made at the time the parties entered into the Contract. Viola told White Dog that (1) the bulk of the Finished Distillate would be produced in 2023 and (2) White Dog's Finished Distillate would not be the first batch produced at the new distillery. (*See id.* at ¶¶ 12–13.) White Dog states that it was induced to enter into the Contract based on Viola's representations, and that it would not have done so otherwise. (*Id.* at ¶ 76.) Because Viola's representations turned out to be false, White Dog seeks recission of the Contract and a refund of the Initial Deposit with interest. (*Id.* at ¶¶ 73, 82.) In response, the Defendants argue that White Dog has not sufficiently pleaded fraud under the heightened pleading standard of Federal Rule of Civil Procedure 9. (R. 19 at 9.)

At the pleading stage, Rule 9 requires the plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Under Rule 9(b), a plaintiff must specify the following:

(1)  what the fraudulent statements were;

(2)  who made the fraudulent statements;

(3)  when and where the statements were made; and

(4)  why the statements were fraudulent.

*Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*, 536 F. App'x 558, 562 (6th Cir. 2013) (internal citation omitted). In other words, a plaintiff must allege the "'who, what, when, where and how' of the alleged fraud." *Sanderson v. HCA-The Healthcare Co.,* 447 F.3d 873, 877 (6th Cir. 2006).

White Dog has not met the heightened pleading standard required for fraud under Rule 9(b). Its complaint relies on conclusory assertions without alleging specific facts that show fraudulent intent or misrepresentation with the requisite particularity. Merely asserting that LMD "had no intention of fulfilling [its] promises," or that it "fraudulently planned to use the Initial Deposit for purposes other than the authorized uses," does not satisfy the pleading standard. Similarly, broad statements that LMD "knew or recklessly disregarded the fact that Luca Mariano Distillery's financial needs, priorities, and/or exigencies would prompt [it] to misapply the $1,600,000.00," and that it "lacked the financial means . . . to meet [its] obligations," are insufficient because they fail to allege how and why the statements were fraudulent.

The complaint does not say how the misrepresentations were false when made, or what actions demonstrate a preconceived intent to misuse the funds. Without such detail, White Dog's fraud claim amounts to little more than a repackaged breach of contract claim and does not plausibly establish a fraudulent scheme. (*See* R. 9 at ¶¶ 66–67, 74–75.) Because

White Dog fails to particularity state the circumstances constituting fraud or mistake, its claims for fraud by misrepresentation and fraud by omission are dismissed.

### D.  Breach of Fiduciary Duty

White Dog alleges that the Contract created fiduciary duties for LMD to hold the Initial Deposit for White Dog's benefit and, in the event of LMD's default, refund the Initial Deposit. White Dog further alleges that Viola knew about or directed LMDs conduct. (R. 9 at ¶ 62.) The Defendants argue that White Dog fails to allege the requisite special relationship necessary to create a fiduciary duty. (R. 19 at 14.)

A fiduciary relationship "is one founded on trust or confidence reposed by one person in the integrity and fidelity of another and which also necessarily involves an undertaking in which a duty is created in one person to act primarily for another's benefit in matters connected with such undertaking." *Steelvest Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 485 (Ky. 1991). To make a claim that a fiduciary relationship existed, the claimant must show the following:

> (1)   that the relationship existed before the transaction at issue;
>
> (2)   that the reliance was not merely subjective; and
>
> (3)   that the nature of the relationship imposed a duty upon the fiduciary to act in the principal's interest, even if such an action were to the detriment of the fiduciary.

*Ballard v. 1400 Willow Council of Co-Owners, Inc.*, 430 S.W.3d 229, 242 (Ky. 2013). "Although fiduciary relationships can be informal, a fiduciary duty does not arise from the universal business duty to deal fairly nor is it created by a unilateral decision to repose trust and confidence; it derives from the conduct or undertaking of the purported fiduciary." *Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 552 (Ky. 2009).

White Dog fails to sufficiently allege the existence of a fiduciary relationship between the parties. There is nothing in the record to suggest that White Dog and LMD's relationship existed before the transaction at issue. Thus, the requirement that a pre-existing fiduciary relationship exist is not met. *See Ballard,* 430 S.W.3d at 242. Both LMD and White Dog are sophisticated business entities operating in the bourbon industry that entered an arms-length commercial transaction. Accordingly, there is no fiduciary duty created by either of the contracting parties. *Flegles Inc.,* 289 S.W.3d at 552.

Moreover, the nature of the parties' relationship does not impose any fiduciary obligation on LMD. LMD was not required to act for White Dog's exclusive benefit or to place White Dog's interests above its own. This was a contract for LMD to distill and for White Dog to purchase bourbon distillate. Each company acted in its own interest with the goal of making a profit. The Contract creates a contractual obligation to reimburse the Initial Deposit upon nonperformance. (*see* R. 1-1 at 19 § 6.1). The Contract does not impose a fiduciary duty on the Defendants. Thus, the parties' relationship is governed by the terms of the Contract, not by the heightened duty required of a fiduciary.

Like any other party to a contract, LMD is bound by the implied duty of good faith and fair dealing. Elevating that duty to a fiduciary standard would unjustifiably burden parties like LMD who require pre-payments as a condition of the contract. Because the transaction reflects a typical business arrangement between two independent commercial entities and not a relationship of trust and dependency, a fiduciary duty cannot be implied. Accordingly, the Defendants' motion to dismiss the fiduciary duty claim is granted.

### E.  Negligence Per se

Because the Defendants did not owe a fiduciary duty to White Dog, they cannot be held to have violated KRS § 517.110, as alleged in Count V of the Amended Complaint. (R. 9

at 18.) That statute, which governs the misuse of entrusted property, presupposes the existence of a fiduciary relationship which is not present here. Absent a statutory violation, there is no basis for a negligence per se claim. Accordingly, White Dog's claim for negligence per se fails as a matter of law, and Defendants' motion to dismiss that claim is granted.

### F. Trust Theories

White Dog alleges that LMD, in holding the $1,600,000 Initial Deposit, "acts as a resulting trustee or constructive trustee for White Dog." (R. 9 ¶ 51.) LMD asserts that a constructive trust is an equitable remedy, not an independent cause of action, and that such remedy is inappropriate here. (R. 19 at 15.)

#### i. Resulting Trust

Under Kentucky law, a resulting trust may be declared in only three circumstances: (1) where a private or charitable trust fails in whole or in part; (2) where a private or charitable trust is fully performed without exhausting the trust estate; or (3) where property is purchased, the purchase price is paid by one person, and, at that person's direction, the vendor transfers the property to another. *Hoheimer v. Hoheimer*, 30 S.W.3d 176, 177 (Ky. 2000). None of these situations apply here. Accordingly, White Dog's resulting trust claim fails as a matter of law.

#### ii. Constructive Trust

The imposition of a constructive trust is not a claim but merely a remedy. *Bewley v. Heady,* 610 S.W.3d 352, 357 (Ky. App. 2020) (citing *Middleton v. Beasley*, 186 Ky. 252, 216 S.W. 591, 592 (Ky. 1919)). Constructive trusts are created "in respect of property which has been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds it." *Keeney v. Keeney*, 223 S.W.3d 843, 849 (Ky. App. 2007) (citing *Hull v. Simon*, 128 S.W.2d 954, 958 (Ky. 1939)). "Law trumps equity." *Bell v. Commonwealth,* 423 S.W.3d 742, 748 (Ky. 2014).

Out of a mere breach of contract, in the absence of fraud, equity will not create a constructive trust. *Bd. of Trs. v. Postel*, 88 S.W. 1065, 1065 (Ky. 1905); *see also O'Bryan v. Bickett*, 419 S.W.2d 726, 728 (Ky. 1967) (holding that "[a] trust arises by virtue of the relationship and the cases do not require that the relationship be a legally enforceable one. Otherwise, the remedy of the complaining party would be a simple suit at law for breach of contract and there would be no need to resort to equitable forms of relief"); *Cullman Sec. Servs. v. United Propane Gas, Inc.*, No. 2014-CA-1738 Ky. App. Unpub. WL 6688709 *11 n.8 (Ky. Ct. App. Oct. 30, 2015) (holding that a the funds retained by the defendant of a contractual pre-payment is not a basis for equitable recovery, rather, it is an aspect of the expectation damages).

White Dog's assertion that LMD serves as a constructive and/or resulting trustee over the $1,600,000 Initial Deposit improperly conflates an equitable remedy with contract damages. The Contract governs the parties' relationship, and if White Dog prevails on its breach of contract claim, it may recover the initial deposit as part of its damages. Because the claims for conversion, unjust enrichment, fraud, breach of fiduciary duty, and negligence per se have been dismissed, there is no independent basis for imposing an equitable constructive trust remedy.. Accordingly, White Dog's claim for trust-based remedies is dismissed.

### G. Punitive Damages

White Dog alleges that it is entitled to punitive damages. (R. 9 at ¶ 102.) The Defendants assert that White Dog's complaint does not sufficiently plead fraud or any other conduct warranting punitive damages. (R. 19 at 15.)

To recover punitive damages, a plaintiff must show that the defendant acted with oppression, fraud, or malice. KRS § 411.184(2).

In this case, White Dog's fraud claims have been dismissed and the only remaining causes of action are for breach of contract, negligent misrepresentation, and civil conspiracy. None of the remaining claims warrant punitive damages. *See* § 411.184(4) ("In no case shall punitive damages be awarded for breach of contract"); *Morton v. Bank of Bluegrass & Trust Co.*, 18 S.W.3d 353, 348 (Ky. App. 1999) (holding that it is well-established in Kentucky jurisprudence that punitive damages are not recoverable upon a claim for negligent misrepresentation); *Davenport's Adm'x v. Crummies Creek Coal Co.*, 184 S.W.2d 887, 888 (1945) (holding that civil conspiracy is not a free standing claim to which damages are awarded, rather it is a theory to recover for an underlying tort). Accordingly, White Dog's claim for punitive damages is dismissed.

### III.    CONCLUSION

For the aforementioned reasons, the Court hereby ORDERS that the Defendants' Partial Motion to Dismiss (R. 19) is GRANTED. Accordingly, Counts II, III, V, VI, VII, VIII, X, and XIII of White Dog's Amended Complaint (R. 9) are DISMISSED. As a result of this opinion, the only remaining claims in this action are for breach of contract (Count I), request for declaratory judgment (Count IV), negligent misrepresentation (Count IX), civil conspiracy (Count XI), and indemnification (Count XII).

This 10th day of November, 2025.

Signed By:

*Karen K. Caldwell*

**United States District Judge**